## JOHN F. MOORE v. WILLIAM FISHER.[1]

May 3, 1912.

Nos. 17,449—(57).

**Charge to jury — punitive damages.**

In this, an assault and battery case, where the evidence authorized the

---

[1] Reported in 135 N. W. 1126.

jury to find that the assault was unprovoked, or that excessive force was used upon slight provocation, plaintiff was entitled to an instruction that, in the discretion of the jury, punitive damages may be included in the verdict.

**Same — recovery for impaired hearing.**

Upon the evidence the court properly refused to instruct the jury that plaintiff could not recover for impaired hearing occasioned by the assault.

**Rulings upon evidence.**

The rulings of the court upon the reception of evidence, and thereafter withdrawing the same from the consideration of the jury on defendant's motion, examined, and found without prejudice or error.

**Verdict not excessive.**

A verdict of $500 in this action, which may have included, not only damages for physical and mental pain temporarily resulting from the assault, but also for impaired hearing and punitive damages, *held* not so excessive as to indicate that it was prompted by passion or prejudice.

Action in the district court for Benton county to recover $2,000 for assault and battery. The reply denied that plaintiff ever conducted himself in an offensive way towards defendant's wife while he was working at her dwelling house or that he attempted an assault upon defendant. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $500. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*Stewart & Brower,* for appellant.

*J. D. Sullivan,* for respondent.

HOLT, J.

Plaintiff sued defendant for assault and battery, and recovered a verdict of $500, which the trial court refused to disturb, and this appeal is the result.

In the erection of a dwelling house for defendant's wife, plaintiff worked as a bricklayer for the contractor. In the afternoon of September 8, 1910, while engaged in lining the fireplace with fire brick, Mrs. Fisher, believing he was using mortar, instead of fire clay, to lay the brick in, telephoned for her husband, the defendant. He

came, and ordered plaintiff to get off the premises. Plaintiff answered he would not do so, or would not till he got damn good and ready, as defendant claims. At that defendant struck plaintiff with his open hand on the side of the face, then grabbed him around the throat, and dragged or pushed and partly carried him some twelve or fourteen feet out of the building. Plaintiff received scratches on the neck, and claimed to have suffered from the effects of the assault for some days, but continued to work right along. He also claimed that he was rendered deaf in the left ear from the blow, but admits that he was hard of hearing in both ears before. Defendant's experts state that he hears with the left ear, but that it is somewhat more defective than the right. The defense pleaded was that plaintiff struck at defendant with the trowel he was using when the angry words were passing, and the force used by defendant was no more than necessary for protection. Besides defendant's wife, two or three fellow workmen on the premises saw the affray. Plaintiff is a small man over fifty years old. The defendant is forty-one years of age, large, strong, and, as he puts it, able to take care of himself.

The errors assigned and urged are: Submitting to the jury whether punitive damages might be given; refusing to instruct that no allowance could be made for impaired hearing; permitting a physician called by plaintiff to testify that he found a perforation of the left ear drum three months after the assault, and not striking this testimony from the record; and that the damages are excessive.

Plaintiff was entitled to insist on his version of the affray, and the jury had the right to accept it as true. According to that, plaintiff was doing his work properly and as directed by his foreman. The defendant, called by his wife from a distance, came up to plaintiff and with a curse told him to get off the premises. Plaintiff had not had any words with defendant's wife, and there was no occasion for anger, except a belief that plaintiff was using ordinary mortar, instead of fire clay, in lining the fire box. No attempt was made by defendant to find either plaintiff's employer or his foreman before ordering him away. The only provocation defendant claims for the

assault is that plaintiff stuck up his trowel to within a few inches of his face and declined to leave till he "got damn good and ready." Defendant did not rest content with a slap or blow, which the alleged taunt of plaintiff provoked; but he grabbed plaintiff by the throat, and pulled and partly carried him out of the building, till defendant's wife interfered, as she admits. After the affray was over, defendant's frame of mind and knowledge that he had deliberately invaded plaintiff's rights is indicated by his retort to plaintiff's threat to make him smart for it that he (defendant) had the price. Defendant was conscious of his superior strength and ability to take the law into his own hands as against plaintiff, if he so chose.

The jury had a right to believe plaintiff that there was no provocation whatever for the assault in the work, in the language, or in the attitude of plaintiff. If so, no criticism may be offered to the conclusion that the assault was wilfully malicious and a wanton violation of plaintiff's rights, warranting the imposition of punitive damages in the discretion of the jury. The record brings the case within the rule announced in Baumgartner v. Hodgdon, 105 Minn. 22, 116 N. W. 1030, and the cases there cited.

That plaintiff's hearing was more impaired in the left ear than the right, defendant's experts apparently found true. Plaintiff testified that the blow made him deaf in the left ear. The opinion of his own medical expert was that the hearing in the left ear was gone. In this situation the court would not be warranted in giving this instruction to the jury, asked by defendant, namely: "The evidence in this case shows conclusively that plaintiff's hearing in his left ear was not affected by this alleged assault on the part of defendant, hence no allowance to the plaintiff can be based on the alleged loss or impairment of his hearing." The jury were not bound to take the opinion of the defendant's experts as against plaintiff's testimony on the effect of the blow on his hearing.

On the trial plaintiff called a physician, who testified, against the objection of defendant, that three months after the affray he made an examination of plaintiff, and then found a perforation of the left ear drum, which, however, was perfectly healed at the time of the

trial. When the court permitted the testimony, it was on counsel's promise that he would supply proof which would connect it with the blow given by defendant. At the conclusion of the testimony, defendant's counsel, deeming that the promised proof had not been supplied, moved the court to strike all testimony of perforation of the ear drum from the record. Over four pages of printed matter show the full discussion of counsel and the court's ruling thereon, which was: "I shall grant the request to the extent that there is no evidence tending to show that the rupture of this ear drum existed or was caused on September 8, at the time of this transaction." The motion, argument, and ruling occurred apparently in the presence of the jury, but no further instruction was given or asked for in regard to this testimony. If the ruling made was considered not a sufficiently explicit direction to the jury to eliminate the testimony, the court's attention ought to have been called thereto. Not having done so, defendant is not in a position to predicate error on the action of the trial court. But, furthermore, we are of the opinion that the jury could get no other impression from the discussion and ruling than this: That as a matter of law there was no connection shown between the assault and the perforation of the ear drum found three months later, and that hence the testimony of the perforation should be wholly disregarded.

The contention is also made that the damages are so excessive as to indicate passion and prejudice. Actual damages included pain and suffering, both physical and mental. The humiliation and mental suffering caused by such handling as defendant subjected plaintiff to in the presence of his fellow workmen may be estimated by a jury at a substantial amount. Then, as hereinbefore stated, the jury may have found that the blow caused impairment of plaintiff's hearing, authorizing damages in a considerable sum. If the jury included punitive damages in the verdict, as might have been done, we are not informed of the amount thereof. There is no evidence as to defendant's financial ability, except his boast at the time of the affray that he had the price. But, on appeal, error must be shown. We cannot assume that defendant is in such financial circumstances that a sub-

stantial sum imposed as punitive damages would be excessive. The jury and trial court, residents of the same county as the parties, and observing them at the trial, are no doubt in better position to say what damages are proper, both by way of compensation and punishment, if any, than this court; and, while a smaller verdict would have appealed more to us, still we cannot say, on this record, that a verdict of $500, approved by the trial court, is so excessive as to indicate passion or prejudice on the part of the jury.

Order affirmed.