**Douglas Dean CLEMENS, Troy Wilcox, et al., Respondents,**

v.

**STATE FARM FIRE AND CASUALTY CO., Appellant.**

**No. C6–85–636.**

Court of Appeals of Minnesota.

Nov. 26, 1985.
Review Granted Jan. 31, 1986.

R.D. Blanchard, Laura S. Underkuffler, Minneapolis, for appellant.

Tanya M. Bransford, Minneapolis, for Douglas Dean Clemens; David G. Moeller, Minneapolis, for Troy Wilcox.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent Clemens brought a declaratory judgment action against his insurer to determine whether insurance coverage exists. The trial court refused to instruct the jury that intent to injure may be inferred from the character of the tortfeasor's acts. The court decided the issue of coverage only upon the basis of the insured's intent to injure, leaving for the trial on the merits

the issue of whether the victims sustained bodily injury. The trial court also denied the insurer's motion for a judgment NOV on the issue of intent to injure one of the tort victims. We affirm the trial court's decision to leave for the trial on the merits the issue of bodily injury and find that the trial court did not err in instructing the jury. We reverse, however, the trial court's denial of the motion for judgment NOV on the issue of intent to injure one of the tort victims.

### FACTS

Douglas Clemens is an insurance policy holder of State Farm Fire and Casualty Co. His policy includes a provision that covers him for personal injuries to others that were negligently or unintentionally inflicted by him.

Bobby Meyer is the son of Mr. and Mrs. Stephen Meyer, who live across the street from Clemens. Troy Wilcox is the son of Mrs. Cheryl Wilcox. In March 1982, both boys were in the eighth grade at Oak Grove Junior High School. Troy and Bobby were not friends; Troy was considered to be a bully, and he often harassed Bobby.

In March 1982, Bobby expressed to his parents his fear of Troy Wilcox. He said he was most afraid when walking home from school. Thus, Bobby's mother asked Mrs. Clemens to give Bobby a ride home from the bus stop when Mrs. Clemens picked up her own children. Mrs. Clemens agreed.

On March 19, 1982, Clemens was home from work early. His wife asked him to pick up the children from the bus stop, and he agreed. As he was driving toward the bus stop, he noticed Bobby Meyer walking rapidly toward Clemens' car. Behind Bobby was Troy Wilcox, who was hitting and shoving Bobby. Apparently, Troy had gotten off the bus at Bobby's stop, even though Troy's stop was further down the road.

When he saw what was happening, Clemens got out of his car and confronted Troy. "If you want to fight someone, fight me!" Clemens exclaimed. He then grabbed Troy by the hair and maneuvered him next to the car. He slammed Troy's head against the car a number of times, and exclaimed, "Do you like to fight?" Then he kicked Troy's legs out from under him. While Troy was on the ground, respondent placed his knee on Troy's chest, grabbed his head, and slammed it against the pavement a number of times. Clemens' actions resulted in a number of scrapes and bruises to Troy's head.

Troy ran off once Clemens let him go. Clemens got back into his car, and Bobby said, "Now I'm really going to get it." Clemens assured Bobby he would take care of that. He drove down the street looking for Troy. When he saw him, he exclaimed out the window, "If you do it again, I'll come after you again!" Troy responded that he was going to sue.

Forty-five minutes later, Clemens was again at home. Cheryl Wilcox appeared at Clemens' front door. When he opened it for her, she asked, "Are you the man who beat up my son?" Clemens did not deny that he was. The two were exchanging names and addresses when an argument began. Clemens swore at Wilcox during the argument, and she stormed out of the house, slamming the door as she left.

Troy and Cheryl Wilcox brought suit against Clemens. They sued him for assault and battery, emotional distress, and negligence for his attack upon Troy. They also sued him for assault and negligence stemming from the incident with Cheryl Wilcox.

Clemens notified his insurance company of the impending lawsuit, but the company refused to defend him. The company claimed that it is liable under the policy only for unintentional or negligent acts causing bodily injury. It claims that Clemens acted intentionally when he injured Troy Wilcox, thus excusing the company from liability. It claims further that even if Clemens had no intent to harm Cheryl Wilcox during his confrontation with her, Cheryl Wilcox suffered no bodily injury. Since the insurance contract covers only

instances of bodily injury to others, the company claims it is not liable to defend against any assault or negligence charges from which no bodily injury resulted.

Clemens and the Wilcoxes then sued State Farm Insurance in a declaratory judgment action. In a special verdict, the jury found that Clemens did not act with intent to inflict bodily injury to either Troy or Cheryl Wilcox. Thus, the trial court found that the insurance company was bound under its contract to defend against the Wilcoxs' charges. State Farm appeals.

## ISSUES

1. Should the trial court have granted the insurer's motion for a judgment NOV regarding the insured's intent to injure Troy Wilcox?

2. Should the jury have been instructed that they could infer intent to injure Cheryl Wilcox from the nature of the insured's acts?

3. Did the trial court err in failing to determine in the declaratory judgment action whether Cheryl Wilcox suffered bodily injury?

## ANALYSIS

■ I. A judgment notwithstanding the verdict may be granted only where the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome. *Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983). Intent to injure for the purposes of determining insurance coverage "may be established by actual proof of an intent to injure or by showing that the character or nature of the act is such that intent can be inferred as a matter of law." *Auto-Owners Insurance Co. v. Smith*, 376 N.W.2d 506 (Minn.Ct. App.1985) (citing *Woida v. North Star Mutual Insurance Co.*, 306 N.W.2d 570, 573 (Minn.1981). Intent is inferred as a matter of law where "the evidence is so overwhelming on one side that reasonable minds cannot differ as to the proper outcome." *See Lamb*, 333 N.W.2d at 855. Thus, a judgment NOV is proper where

intent to injure must be inferred from the nature of an insured's acts.

■ Intent to injure should be inferred when by the nature of the act, it may be inferred that the tortfeasor knew or should have known that injury could result. *See Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 177–78, 244 N.W.2d 121, 125, 126 (1976). We find that the trial court erroneously denied a judgment NOV as regards Troy Wilcox, but not regarding Cheryl Wilcox. By the very nature of Clemens' actions regarding Troy Wilcox, intent to injure had to be inferred. The appellant manhandled Troy Wilcox in such a way that injury was bound to result. The appellant knew that Troy Wilcox would sustain injury, so intent to injure Troy Wilcox must be inferred.

■ This is not the case, however, with Troy Wilcox's mother. It cannot be said that in his verbal exchange with Cheryl Wilcox, the appellant necessarily acted with intent to injure. Therefore, the jury's verdict as it applies to Cheryl Wilcox will stand.

■ II. The trial court has a duty to instruct the jury on all law applicable to the case. *Latourelle v. Horan*, 212 Minn. 520, 524, 4 N.W.2d 343, 345 (1942). Appellant argues that the trial court erred when it failed to instruct the jury that it could infer intent to injure from the character of Clemens' act. As to the claim of Troy Wilcox, our first holding here makes it unnecessary to decide this issue on instructions. As to the claim of Cheryl Wilcox, we do not agree with appellant's contention. It is not clear that the insured's conduct during his exchange with Cheryl Wilcox was such that intent to injure had to be inferred. An analysis of the totality of the jury instructions indicates that the law was properly placed before the jury.

■ III. Appellant argues that the trial court erred by instructing the jury to assume, for the purpose of determining

whether the insured was covered by his insurance policy, that Cheryl Wilcox incurred bodily injury. Appellant argues that since "bodily injury" is one prerequisite for a finding that the policy covers the incident, the issue of bodily injury should have been decided at the declaratory judgment proceedings.

Typically, however, courts hearing declaratory judgments under these circumstances will determine coverage by deciding only the issue of intent. The court will leave for the trial on the merits the issue of whether the insured had inflicted bodily injury on the victim. *See, e.g., Farmers Insurance Group v. Hastings,* 366 N.W.2d 293, 294 (Minn.1985). We will abide by that policy because we think it is consistent with the best interests of all involved. To decide the issue prematurely will force the parties to speak out of both sides of the mouth: Clemens must argue here that Cheryl Wilcox sustained bodily injury; at the trial on the merits, Clemens would argue that there was no bodily injury. Furthermore, if the issue was decided in the declaratory judgment action, the doctrine of collateral estoppel would work to preclude the parties from litigating the issue further. A central issue of the case on the merits would have been finally determined in the declaratory judgment action. That would work a grave unfairness to Clemens, and this result cannot be sanctioned.

### DECISION

Because intent to injure Troy Wilcox could be inferred from the character of the tortfeasor's acts, the trial court erred when it failed to grant the insurer's motion for a judgment NOV regarding Troy Wilcox. The trial court determined properly, however, that intent to injure Cheryl Wilcox could not be inferred. Furthermore, the trial court properly left to the trial on the merits the issue of whether Cheryl Wilcox had sustained bodily injury.

Affirmed in part, reversed in part and remanded.