**ALLSTATE INSURANCE COMPANY, a foreign corporation, Plaintiff,**

v.

**JACK S and Joyce S, individually and as natural parents and guardians of KS, a minor; Michael V and Cynthia V, individually and as natural parents and guardians of RV, a minor; Does I through X, inclusive, Defendants.**

**MICHAEL V and Cynthia V, individually and as natural parents and guardians of RV, a minor, Counterclaimants,**

v.

**ALLSTATE INSURANCE COMPANY, a foreign corporation; and Does I through X, inclusive, Counterdefendants.**

**No. CV S–87–221 RDF.**

United States District Court,
D. Nevada.

March 21, 1989.

Rawlings, Olson & Cannon by Walter R. Cannon, Las Vegas, Nev., for plaintiff.

Michael Peters, of Morse & Mowbray, Las Vegas, Nev., for defendants.

## REVISED ORDER

ROGER D. FOLEY, Senior District Judge.

This matter is before the court on cross-motions for summary judgment. The parties dispute whether an insurance policy covers the insureds under the facts as presented herein. This court has jurisdiction under 28 U.S.C. § 1332 (1982).

### I. *Facts*

The parties have stipulated to the admission for this court's review of several police statements, a report from a sexual abuse therapist, the insurance policy issued by Allstate Insurance Company, and a state court complaint filed prior to the filing of the instant case. Doc. # 19, Exhs. A, B, C, D, E, and F. Based upon the submitted exhibits and during the time of the incident in question, the following facts are undisputed.

Jack S and Joyce S are the parents of KS, a fourteen-year-old girl. Michael V and Cynthia V are the parents of RV, a three-year-old boy. The two families live near each other and the teenage girl frequently babysits the little boy.

On May 27, 1985 KS agreed to babysit RV at the boy's home for a few hours between approximately 11:45 a.m. and 3:30 p.m. At some point during this period, the teenager sexually molested the little boy. Specifically, the girl undressed herself, removed the boy's pants, and placed the boy's penis into her mouth.

Later that evening, the little boy informed his parents of what his babysitter had done. The boy's parents contacted the Las Vegas Metropolitan Police Department, the police investigated the complaint, and then referred the matter to the Clark County Juvenile authorities for prosecution. Subsequently, the teenage girl pleaded no contest in a juvenile court proceeding charging sexual assault. Doc. # 19 at 5; Doc. # 20 at 3.

At the time of this incident, a homeowner's liability insurance policy (# 044–839–147) was in effect. The policy was issued by Allstate Insurance Company (Allstate) and the insureds were Jack S and Joyce S, and their daughter.

The Allstate policy states:
LOSSES WE COVER
We [Allstate] will pay all sums arising from the same loss which an *insured person* becomes legally obligated to pay as damages because of *bodily injury* or *property damage* covered by this part of the policy.

. . . .

EXCLUSIONS–LOSSES WE DO NOT COVER
1 We do not cover *bodily injury* or *property damage* intentionally caused by an *insured person.*

Doc. # 19, Exh. E at 17 (emphasis in original).

### II. *Procedural History*

On May 27, 1987 the boy's parents filed a complaint in the Eighth Judicial District Court for the State of Nevada seeking damages from KS and her parents for physical and emotional suffering incurred by the boy. The complaint seeks damages from KS predicated on negligent infliction of emotional distress, gross negligence, and wanton and reckless misconduct. In addi-

tion, the complaint seeks damages from Jack S and Joyce S for negligence based on failure to properly supervise their daughter and failure to warn of their daughter's "deviant sexual tendencies". The complaint also seeks damages from the girl's parents for conduct of their daughter as imputed to the parents pursuant to NRS 41.470. Doc. # 19, Exh. F.

After receiving the complaint, Jack S and Joyce S notified Allstate that they were making a claim on their homeowner's policy to cover litigation costs and any damages which may be awarded. Allstate accepted the claim with a reservation of right to disclaim any obligation under the policy based upon the intentional acts exclusion clause referenced above. Allstate obtained counsel who filed an answer dated October 9, 1987. Doc. # 19, Exh. H.

On March 27, 1987 Allstate filed a complaint with this court seeking declaratory relief. Doc. # 1. Allstate seeks a determination of its obligations to the insured vis-a-vis the homeowner's policy. Both parties now move for this court's determination of the meaning of the insurance policy's exclusion clause.

III. *Whether the Allstate homeowner's insurance policy covers claims for sexual misconduct by the insured's minor child against the minor child of Michael V and Cynthia V*

■ The Allstate insurance policy excludes from its coverage "bodily injury ... intentionally caused...." Doc. # 19, Exh. E at 17. This clause is ambiguous. It could mean either an intent to commit the act or cause the harm. In resolving this ambiguity, courts have construed the clause against the insurance provider and ruled that for the exclusion clause to take effect, both an intent to commit the act and cause the harm must be proven. *E.g., Allstate Ins. Co. v. Thomas,* 684 F.Supp. 1056, 1057 (W.D.Okl.1988); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638, 641 (Minn.Ct.App.1986). The parties in this action agree that both requirements must be met before coverage is excluded. Doc. # 19 at 8; Doc. # 20 at 7–8.

The parties do not dispute that KS intentionally placed the little boy's penis into her mouth and sucked it. Rather, the parties disagree whether the second requirement, an intent to harm, is proven. Michael V and Cynthia V argue that KS did not subjectively intend to harm or injure the little boy. Doc. # 20 at 7–8. Allstate proposes that this court find as a matter of law an intent to harm based upon the nature of the act committed. Doc. # 19 at 8.

■ In diversity cases, a federal court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). There is no reported Nevada case law construing the exclusion clause at issue in this case. In the absence of controlling state law, this court must use its own best judgment in predicting how Nevada's Supreme Court would decide the substantive issue. *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir. 1986), *modified,* 810 F.2d 1517 (1987). In performing that function, this court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980).

■ Most courts have held that when adults have sexual relations with minors, an intent to harm the children will be inferred as a matter of law so that an exclusion clause will prevent recovery under a homeowner's insurance policy. Some courts measure the intent of the insured by the objective reasonable person standard. *E.g., Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985) (twenty-one-year-old disc jockey engaged in sexual activity with fourteen-year-old girl); *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984) (stepfather sexually abused his stepdaughter). The majority of courts find that the express language of the exclusion clause refers to the subjective intent of the insured. *E.g., Allstate Ins. Co. v. Thomas,* 684 F.Supp. 1056 (W.D. Okl. (1988) (male bus driver for day care center fondled a young girl); *Rodriquez v.*

*Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986) (stepfather had intercourse with his fifteen-year-old stepdaughter). This court is persuaded by the language of the exclusion clause in the instant case that a subjective intent to injure must be proven.

Nevertheless, most courts which require a subjective intent to injure have inferred a specific intent to injure to an adult from the act of sexual conduct with a minor. *E.g., Fire Ins. Exchange v. Abbott,* 204 Cal.App.3d 1012, 251 Cal.Rptr. 620, 629 (1988); *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638, 641–642 (Minn.App. 1986); *Rodriquez v. Williams,* 107 Wash. 2d 381, 729 P.2d at 630–631. A minority of courts have refused to infer intent to harm to an adult, but require actual proof of the adult's subjective intent. *State Auto Mut. Ins. Co. v. McIntyre,* 652 F.Supp. 1177 (N.D.Ala.1987); *MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 471 A.2d 1166 (1984).

The parties have cited and the court has found only one case where a court interpreted an exclusion clause after a claim had been made under the homeowner's policy for injury resulting from sexual acts between minors. In *Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d 638 (Minn.Ct. App.1986), a teenage boy periodically babysat two sisters and another little girl who lived in his neighborhood. Over a period of time, between the boy's thirteenth and sixteenth years and the girls' sixth and ninth years, the boy, while babysitting, performed "various acts of sexual contact and penetration" against all three girls. *Id.* at 639.

Farmers Insurance sought summary judgment arguing that an intent to harm should be inferred as a matter of law from the nature of the acts performed against the girls. The parents of the children argued that the boy's age and immaturity prevented him from forming the requisite intent to injure the girls. *Id.* The court held that whenever sexual contact is perpetrated against a child, an intent to cause harm will be inferred. *Id.* at 642. The Minnesota court explicitly stated that the boy's "alleged lack of subjective intent to

injure is irrelevant." *Id.* The court based its decision on three Minnesota Supreme Court cases which inferred intent to harm where adults sexually assaulted another person. *Id.* at 641–642. *See State Farm Fire and Casualty Co. v. Williams,* 355 N.W.2d 421 (Minn.1984) (college professor sexually abused a disabled adult); *Estate of Lehmann v. Metzger,* 355 N.W.2d 425 (Minn.1984) (uncle sexually abused his minor niece); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834 (Minn.1982) (foster parent sexually abused a minor foster child).

Although it may be understandable for a court to find as a matter of law that an adult intended to harm a child by sexually abusing that child, it is too broad a leap in logic to find that a minor intended to injure another minor by engaging in sexual acts. Knowledge which may be inferred to an adult may not be properly inferred to a child. In *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985), the court inferred an intent to harm a fourteen-year-old girl who had sexual relations with a twenty-one-year-old disc jockey. Even though the individuals appeared to engage in their sexual acts voluntarily, the court found that because a criminal statute made it a crime for an adult to engage in sexual acts with a minor, it would infer an intent to harm. *Id.* 376 N.W.2d at 405. The court stated that in passing the criminal statute, the Michigan legislature sought to prevent "severe emotional injury to *naive fourteen year olds [sic] barely beginning to adjust to the changes wrought by puberty." Id.* (emphasis added). It is axiomatic that the courts cannot seek to protect naive fourteen-year-old girls on the one hand, while inferring the most degrading and unnatural thoughts to them on the other hand.

Furthermore, the language of the present insurance policy lends itself to an interpretation that subjective intent must be proven at trial. The policy covers damages except those expressly excluded. Doc. # 19, Exh. E at 17. If Allstate and the insured believed that some acts are so certain to cause injury that an intent to

harm should be inferred to the insured, then the exclusion clause should have provided for this expressly. In Nevada, when "an insurer intends to restrict the coverage of the policy, it should clearly and precisely state that intent." *Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 220, 606 P.2d 1095, 1098 (1980). The fact that the exclusion clause does not provide for an inference of intent to harm counsels against this court's imposition of such a clause.

■ In *MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 471 A.2d 1166 (1984), the court utilized this rationale in finding that an intent to harm could not be inferred to a stepfather who had sexually abused his stepdaughter. *Id.* 471 A.2d at 1168.[1] *Contra Western Nat. Assur. Co. v. Hecker,* 43 Wash.App. 816, 719 P.2d 954 (1986).

Notwithstanding the existence of cases which hold that subjective intent is irrelevant to determine an intent to harm a person who has been sexually assaulted, *e.g., Illinois Farmers Ins. Co. v. Judith G.,* 379 N.W.2d at 642, other courts have suggested that age or some other factor may cause a diminished mental capacity disproving intent to harm. For example, in *Allstate Ins. Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984), the court interpreted a California Statute, which states that an insurer is not liable for the "willful act" of the insured, to mean that the insurance policy did not cover harm caused by sexual assault against a minor. *Id.* 206 Cal.Rptr. at 613. The court noted that the insured did not allege a lack of intent to harm the victim and no facts raised an issue as to the insured's mental capacity. *Id.* 206 Cal.Rptr. at 614.

Furthermore, the court stated that the focus of the "willfulness" requirement under the statute "is on the intention to do the act which causes the damage, rather than the intention to cause the resulting damage." *Id.* 206 Cal.Rptr. at 613 n. 4. The court then suggested that exclusion under the insurance policy's exclusion clause may not be warranted if there was no intent to harm. *Id. But see Fire Ins. Exchange v. Abbott,* 204 Cal.App.3d 1012, 251 Cal.Rptr. 620 (1988) (noting possible conflict with other California appellate court decisions while finding subjective intent of adult is irrelevant where criminal sexual conduct is proven).

In a case factually similar to *Kim W.,* the Ninth Circuit Court of Appeals also noted that diminished mental capacity may be proven to show lack of intent to harm. *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449 (1988). In *Gilbert,* an adult, Albert, sexually molested a minor. Albert argued that he committed the acts of molestation with a diminished mental capacity which negated an intent to harm. *Id.* at 452. The court addressed this argument by stating: "Even if we were to accept this argument, Albert did not allege any facts supporting such a contention in response to Allstate's com-

---

1. Cogently argued by Allstate is the proposition that *MacKinnon* is no longer valid law in light of *Vermont Mut. Ins. Co. v. Malcolm,* 128 N.H. 521, 517 A.2d 800 (N.H.1986) which held that a homeowner's insurance policy did not cover harm resulting from the male insured's sexual assault of an eleven-year-old boy. Every insurance policy, however, is different and the policies involved in *MacKinnon* and *Malcolm* are dissimilar, each presenting different questions of interpretation. Glancing at the contract language involved in *MacKinnon* reveals an exclusion clause similar to the one before this court. *MacKinnon v. Hanover Ins. Co.,* 471 A.2d at 1167 (damage was covered except "bodily injury ... expected or intended by the insured"). In *Malcolm,* however, coverage under the insurance policy was triggered by an "occurrence". Sexual abuse and the harm resulting from such conduct was not held by the court to be an occur-

rence. Conversely, because a coverage clause rather than an exclusion clause was being interpreted, the court did not determine whether the injury was excluded pursuant to an exclusion clause. *Vermont Mut. Ins. Co. v. Malcolm,* 517 A.2d at 801–802.

Obviously, these two cases serve to illustrate that the court's role is to interpret the language of the insurance policy before it. Officious court involvement in interpreting insurance language must be tempered with an understanding of the type of clause being reviewed. Likewise, the type of insurance coverage being construed in a particular case should be constantly borne in mind. *See generally,* Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R. 4th 957, 971–976 (1984).

plaint for declaratory relief or motion for summary judgment." *Id.*

In a recently rendered opinion, the Ninth Circuit Court of Appeals followed *Gilbert*'s dicta and held that an adult male who had sexually molested a twelve-year-old boy could present evidence suggesting diminished mental capacity in forming an intent to harm. *State Farm Fire and Cas. Co. v. Estate of Jenner*, 856 F.2d 1359 (9th Cir.1988) (the court disapproved *State Farm Ins. Co. v. Abraio*, 683 F.Supp. 220 (N.D.Cal.1988), which Allstate cites in its motion, Doc. # 20 at 16–22). Psychiatric evidence suggested that the adult male "was a Pedophile and considered the sexual contact to be part of a caring, nurturing relationship...." *Id.* at 1363. Thus, the court determined that the psychiatric evidence placed the adult's subjective intent at issue and summary judgment could not be granted. *Id.*

Here, Allstate has stipulated to the submission of an affidavit by Nadine Bleeker, a state certified family therapist with extensive experience in sexual abuse matters. Doc. # 19, Exh. D. In her affidavit, Bleeker states "it is my opinion that, to a reasonable degree of certainty, [KS] did not intend to harm or injure [RV] when she sexually assaulted him." *Id.* at 2. This evidence sufficiently raises the question of the girl's intent.

This court is not prepared to delve into the psychological understandings of a fourteen-year-old girl and make a determination of her intent as a matter of law. Nor does this court believe the Nevada Supreme Court would make such a ruling. In Nevada, a juvenile is presumed to be immature. *Marvin v. State*, 95 Nev. 836, 839 n. 4, 603 P.2d 1056, 1058 (1979). A juvenile is also exempt from criminal laws unless the juvenile is between the ages of sixteen and eighteen and the juvenile authorities determine that the minor should stand trial as an adult. *Id.*; NRS 62.080 (1987). Thus, the rationale of courts that the violation of a criminal law prohibiting sexual assault by an adult necessarily leads to an inference of intent to harm, *e.g.*, *Allstate Ins. Co. v. Thomas*, 684 F.Supp.

1056, 1060 (W.D.Okl.1988); *Linebaugh v. Berdish*, 376 N.W.2d at 405, is not transferrable to determine whether a minor intended harm when committing a similar act. A minor's diminished mental capacity to comprehend the ramifications of her actions may be shown at trial. The issue of the girl's intent, therefore, is for the factfinder in the state court proceeding.

## IV. *Whether the Allstate homeowner's insurance policy covers claims for negligence by parents in failing to prevent their minor child's sexual misconduct*

The insureds argue that the exclusion clause which prevents coverage of "bodily injury ... intentionally caused by *an* insured, Doc. # 19, Exh E at 17 (emphasis added), is ambiguous. "An" insured may refer to the singular or the plural. In other words, if their daughter is excluded from coverage pursuant to the exclusion clause, then does the exclusion clause also exclude coverage for any negligence of Jack S and Joyce S which contributed to their daughter's actions? Because this court does not infer an intent to harm, the exclusion clause may or may not apply to disallow coverage for harm caused by the daughter. That determination will be made by the factfinder in the state court proceedings.

Consequently, since Allstate has a duty to defend the insured under the policy, and since a jury may find no intent to harm, resolving the meaning of "an insured" is not necessary at this time. This issue can be addressed if and when a jury finds that KS possessed an intent to harm. *But see generally Allstate Ins. Co. v. Foster*, 693 F.Supp. 886 (D.Nev.1988) (Judge McKibben found that similar policy language in a homeowner's policy referred to all of the insureds).

Therefore, based upon the reasons stated herein, Allstate's motion for summary judgment (Doc. # 19) is DENIED. The defendants' motion for summary judgment (Doc. # 20) is GRANTED. Allstate may be liable to the insured under the homeowner's policy and Allstate has a duty to

defend the insured in the state court proceeding.